| | |
|---|---|
| **Dollye Graham-Matthews**<br>   Individually and in her capacity as the Organizer and Managing Member of Bolton's Spicy Cafe, LLC, and each of its related entities and/or subsidiaries,<br>   and<br>**Bolton's Spicy Cafe, LLC**<br>and each of its related entities and/or subsidiaries,<br>   Plaintiffs<br><br>v.<br><br>**L.T. Johnson**<br>   Individually and in his capacity as the Organizer and Managing Member of Bolton's Famous Hot Chicken and Fish, LLC, and each of its related entities and/or subsidiaries,<br>   and<br>**Bolton's Famous Hot Chicken and Fish, LLC**<br>and each of its related entities and/or subsidiaries,<br>   Defendants | Case No.: _____ |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Dollye Graham-Matthews and Bolton's Spicy Cafe, LLC (collectively, "**Plaintiff**"), by and through its undersigned attorney, and for its Complaint against Defendants, L.T. Johnson (collectively, "**Defendant**"), allege, on knowledge as to its actions and otherwise upon information and belief, and state as follows:

## PARTIES

1.  Plaintiff **Dollye Graham-Matthews** is a citizen and resident of Murfreesboro, Rutherford County, Tennessee and resides at 107 Williamson Court, Murfreesboro, TN 37128.

2.  Plaintiff **Bolton's Spicy Cafe, LLC** is a Limited Liability Company formed under the laws of Tennessee and does business in the State of Tennessee with a principal place of business at 7073 Highway 70 S, Nashville, TN 37221.

3.  Defendant **L.T. Johnson** is a citizen and resident of Houston, Harris County, Texas, and has a last known residence at 2317 Morse St., Houston, Texas, 77019.

4.  Defendant **Bolton's Famous Hot Chicken and Fish, LLC** is a Limited Liability Company organized under the laws of Tennessee and does business in the State of Tennessee with a principal place of business at 1003 Darwood Ct., Hendersonville, Tennessee 37075.

## JURISDICTION

5.  This Court has subject matter jurisdiction over this matter pursuant to 28 US Code § 1331 because it pertains to the ownership of the intellectual property of a business.

6.  This Court has diversity jurisdiction over this matter pursuant to 28 US Code § 1332.

7.  Venue is proper in the Middle District of Tennessee because it is the district in which a substantial part of the acts or omissions giving rise to this case occurred pursuant to 28 US Code § 1391(b)(2).

## FACTS

8.  Plaintiff Bolton's Spicy Cafe, LLC is a restaurant that specializes in the preparation and service of "Nashville Hot Chicken," which is owned by Plaintiff Dollye Graham-Matthews, and formerly operated by her husband Bolton's namesake, the late Bolton L. Matthews, who died on June 2, 2021.

9. Bolton L. Matthews was aware of this transaction prior to his death. On his deathbed, Mr. Matthews expressed to Defendant that he wished to provide for his wife and daughter in the immediate aftermath of his death, safeguard his family from having to move out of their home and ensure that his family recipe remained unchanged. None of these goals were achieved.

10. On June 26, 2021, Plaintiff and Defendant entered into a putative Purchase and Sale Agreement prepared by Defendant for the purchase of Bolton's Spicy Cafe, LLC by Defendant (the "**Agreement**" attached hereto as <u>Exhibit A</u>).

11. As consideration for the agreed-upon purchase, Defendant promised to pay $500,000.00 (the "**Purchase Price**"), with an option for the price to "be lower or increased to One Million Dollars ($1,000,000.00) or a higher amount by agreement of both parties if it is later shown that the actual valuation of the Business was a lower or higher amount than the current Purchase Price on the date of the Agreement.

12. The Agreement further qualified that the Purchase Price would be paid in a partial upfront lump sum down payment of $100,000.00, followed by $50,000.00 after the first three months, if the purchased business "hits certain agreed up numbers and the overall employee wages do not exceed 25%," followed by three monthly installments of between $15,000.00 and $20,000.00 from July 2021 to September 2021 until the purchase price was paid in full.

13. Defendant only paid the first $100,000.00, after which point Plaintiff delivered the recipes for all menu items, possession of the premises and company assets to Defendant.

14. Defendant never made any further payments to Plaintiff in any amounts stated under the Agreement, but would occasionally send arbitrary amounts totaling roughly $85,000 throughout the years of 2021-2023, until payments ceased altogether.

15. Paragraph 7 of the Agreement further provided Compensation for Ms. Graham-Matthews in the form of $7,500 per month if the business production allowed this amount to be paid, and if

overall employee wages did not exceed 25%. The agreement did not state a time upon which point these payments were to cease.

16. Plaintiff Dollye Graham-Matthews performed all of her General Responsibilities listed under Paragraph 7 of the Agreement, which substantially required her to work 4 to 5 days per week at the business, and using her best efforts to maintain good relationships with future and former business associates, customers, workers, landlords, etc.; use all of her efforts to transfer all business relationships to Defendant; provide good customer service; and assist in overall business operations, development efforts, and growth objectives, and to do so in good faith.

17. Defendant, by virtue of his dominion and control over restaurant operation, retained significant if not total control over the percentage of employee wages, and there is no record of what "certain agreed up[on] numbers" the business was to reach stated anywhere in the agreement or elsewhere.

18. Assuming the business exceeded 25% of its costs being paid to employee wages, and further assuming agreed upon numbers were never reached, and further assuming that the Purchase Price was never lowered or increased based on extraneous information or events, Defendant would at minimum still have $315,000.00 remaining to pay Plaintiff toward the purchase price.

19. Alternatively, if the business did not exceed 25% of its costs being paid to employee wages, and agreed upon numbers were reached, the Agreement would require Defendant to pay an additional $465,000.00 toward the purchase price.

20. Additionally, the Purchase Agreement would have required $7,500.00 payments to Ms. Graham-Matthews for each month in which Ms. Graham-Matthews performed services for the business where overall employee wage costs did not exceed 25%.

21. Altogether, Defendant owes Plaintiff an amount of money for both the purchase price and compensation for Ms. Graham-Matthews services (the "Owed Funds").

## CAUSES OF ACTION

### Breach of Contract

22. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

23. The contract represents a written contract between Plaintiff and Defendant.

24. Plaintiff performed her obligations under the contract by providing the Recipes for all food items on the menu.

25. Defendant breached the contract when Defendant failed to pay monthly installments to Plaintiff.

26. As a result of the breach of contract by Defendant, Plaintiff suffered injuries including, but not limited to:

    a. the loss of the Owed Funds,

    b. the loss of daily interest on the Owed Funds,

    c. lost opportunity for not having the Owed Funds to invest in other business ventures,

    d. the loss of the value of the Business itself,

    e. the loss of profits made by the Business,

    f. the loss of the value of the trade secrets of the Business

    g. the loss of the opportunity to sell the business, in part or totally, to another party,

    h. the cost of recovery and collection, and

    i. reasonable attorneys' fees and costs incurred by Plaintiff in this action.

27. For the reasons set forth above, Plaintiff is entitled to judgment for compensatory and punitive damages due to Defendants' breach of contract including, but not limited to:

    a. the loss of the Owed Funds,

    b. the loss of daily interest on the Owed Funds,

    c. lost opportunity for not having the Owed Funds to invest in other business ventures,

    d.    alternatively, the business itself

    e.    the costs of recovery and collection, and

    f.    reasonable attorneys' fees and costs incurred by the Plaintiff in this action.

## Ownership of Intellectual Property

28. Plaintiff used the name and all indicia of the restaurant name and brand "Bolton's Spicy Chicken and Fish," (generally, "Bolton's") in commerce prior to Defendant, as evidenced by the putative purchase agreement's existence.

29. Because Defendant never paid Ms. Graham-Matthews the agreed upon Owed Funds for the business, ownership of Bolton's should still remain with Plaintiffs, together with their trademark rights to operate as Bolton's.

30. Defendant intentionally continues to use the name and marks of Bolton's.

31. A substantial likelihood of confusion exists as to the ownership of Bolton's as operated by Defendants versus its lawful operation by Plaintiffs.

32. A low degree of care is anticipated to be exercised by consumers in discerning the difference between Bolton's as operated by Defendant versus as operated by Plaintiff.

33. Allowing Defendant to operate as "Bolton's" substantially infringes upon the Plaintiffs' Trademark Rights, which remain unpurchased.

## Fraud/Fraud in the Inducement

34. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

35. On information and belief, Defendants falsely made multiple representations directly to Plaintiff, including that Defendant:

    a.    intended to pay Plaintiff the Owed Funds,

    b.    intended to and was capable of performing its obligations according to the Agreement, and

  c.  intended to keep the recipes and menu items for Bolton's Spicy Chicken and Fish the same, without such assurances Ms. Graham-Matthews would have never entered into this transaction.

36. Upon information and belief, Defendants knew at the time of each representation that each was a false representation and acted with conscious indifference to the consequences and with the specific intent to induce Ms. Graham-Matthews into entering this bogus transaction.

37. Upon each such representation, Plaintiff reasonably relied on the representations of Defendant.

38. Upon information and belief, Defendant maliciously, with conscious indifference to the consequences, offered false representations, including giving Plaintiff the false hope of fair compensation for the sale of her business and recipes, and for her work in the restaurant after the sale.

39. Upon discovery of Defendants' fraud, Plaintiff promptly notified Defendant that she believed the contract to be illusory and that she was suffering harm from Defendant's nonpayment.

40. As an actual and proximate result of the Defendants' fraud and/or fraud in the inducement, Plaintiff suffered injuries including, but not limited to:

  a.  the loss of the Owed Funds,

  b.  the loss of daily interest on the Owed Funds,

  c.  lost opportunity for not having the Owed Funds to invest in other business ventures,

  d.  the loss of the value of the Business itself,

  e.  the loss of profits made by the Business,

  f.  the loss of the value of the trade secrets of the Business

  g.  the loss of the opportunity to sell the business, in part or totally, to another party,

  h.  the cost of recovery and collection, and

i. reasonable attorneys' fees and costs incurred by Plaintiff in this action.

41. For the reasons set forth above, Plaintiff is entitled to judgment for compensatory and punitive damages due to Defendants' Fraudulent Inducement, but not limited to:

   a. the loss of the Owed Funds,

   b. the loss of daily interest on the Owed Funds,

   c. lost opportunity for not having the Owed Funds to invest in other business ventures,

   d. alternatively, the business itself

   e. the costs of recovery and collection, and

   f. reasonable attorneys' fees and costs incurred by the Plaintiff in this action.

## Fraudulent Misrepresentation

42. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

43. On information and belief, Defendant falsely made multiple representations directly to Plaintiff, including that Defendant

   a. intended to pay Plaintiff the Owed Funds,

   b. intended to and was capable of performing its obligations according to the Agreement, and

   c. intended to keep the recipes and menu items for Bolton's Spicy Chicken and Fish the same, without such assurances Ms. Graham-Matthews would have never entered into this transaction.

44. On information and belief, Defendant's fraudulent statements were made with the intention that Plaintiff would rely on them.

45. Upon each such representation, Plaintiff reasonably relied on the representations of Defendant.

46. Upon information and belief, Defendant maliciously, with conscious indifference to the consequences, offered false representations, including giving Plaintiff the false hope of the payment of its Owed Funds with the specific intent to cause harm and enrich Defendant.

47. Defendant profited from these fraudulent statements at Plaintiff's expense by withholding the Owed Funds.

48. Upon discovery of Defendants' fraud, and after failed attempts to negotiate with Defendant, Plaintiff promptly rescinded the Contract and filed this Complaint with the Court.

49. As an actual and proximate result of the Defendants' fraudulent misrepresentation, Plaintiff suffered injuries including, but not limited to,

    a. the loss of the Owed Funds and funds allegedly spent by Defendant on materials,

    b. the loss of daily interest on the Owed Funds,

    c. lost opportunity for not having the Owed Funds to invest in other business ventures,

    d. the cost of recovery and collection, and

    e. reasonable attorneys' fees and costs incurred by Plaintiff in this action.

50. For the reasons set forth above, Plaintiff is entitled to judgment for compensatory and punitive damages due to Defendants' Fraudulent Misrepresentation, but not limited to:

    a. the loss of the Owed Funds,

    b. the loss of daily interest on the Owed Funds,

    c. lost opportunity for not having the Owed Funds to invest in other business ventures,

    d. the costs of recovery and collection, and

    e. reasonable attorneys' fees and costs incurred by the Plaintiff in this action.

### Breach of the Implied Covenant of Good Faith and Fair Dealing

51. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

52. Plaintiff demonstrated substantial compliance with the spirit and the letter of the Agreement when she:

   a. gave Defendant the secret recipes for all of Bolton's Spicy Chicken and Fish after Defendant paid the first $150,000 of the purchase price,

   b. in a display of good faith, continued to work with Defendant for months without receiving full payment.

53. Defendant demonstrated bad faith in its continued failure to comply with the spirit and the letter of the Agreement by their acts or omissions when Defendant failed to:

   a. at best, attempt to manage the operations of the business such that Defendant would be required to pay Ms. Graham-Matthews any more than the bare minimum allowable under the Agreement,

   b. pay even the smallest amount of Owed Funds conceivable by the Agreement, or

   c. provide Ms. Graham-Matthews with any evidence indicating the performance of the business.

54. As an actual and proximate result of Defendant's breach of the implied warranty of good faith and fair dealing Plaintiff suffered injuries including, but not limited to:

   a. the loss of the Owed Funds,

   b. the loss of daily interest on the Owed Funds,

   c. lost opportunity for not having the Owed Funds to invest in other business ventures,

   d. the loss of the value of the Business itself,

   e. the loss of profits made by the Business,

   f. the loss of the value of the trade secrets of the Business

   g. the loss of the opportunity to sell the business, in part or totally, to another party,

   h. the cost of recovery and collection, and

i. reasonable attorneys' fees and costs incurred by Plaintiff in this action.

## Promissory Estoppel

55. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

56. Defendant made promises to:

    a. continue making payments of the Owed Funds,

    b. manage the business such that it would be sufficiently profitable to pay Ms. Graham-Matthews,

    c. do the work properly and within the reasonably expected standard of professional restaurant owners, and

    d. maintain the promise made to the late Mr. Matthews that the recipe would remain unchanged.

57. These promises were neither ambiguous, vague, nor unenforceable.

58. Plaintiff reasonably relied on these false promises to its detriment.

59. As an actual and proximate result of Plaintiff's reasonable reliance upon Defendant's promises, Plaintiff is entitled to a judgment against Defendant for its suffered injuries including, but not limited to:

    a. the loss of the Owed Funds,

    b. the loss of daily interest on the Owed Funds,

    c. lost opportunity for not having the Owed Funds to invest in other business ventures,

    d. the loss of the value of the Business itself,

    e. the loss of profits made by the Business,

    f. the loss of the value of the trade secrets of the Business

    g. the loss of the opportunity to sell the business, in part or totally, to another party,

    h. the cost of recovery and collection, and

      i.      reasonable attorneys' fees and costs incurred by Plaintiff in this action.

## Unjust Enrichment

60. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

61. Plaintiff conferred upon Defendant a measurable benefit in the payment by Plaintiff to Defendant of the Owed Funds.

62. Defendant consciously accepted the benefit conferred by accepting the Owed Funds from Plaintiff.

63. Plaintiff's payment to Defendant was not conferred officiously or gratuitously.

64. Defendant was unjustly enriched when it kept the Owed Funds and continued operating the Business while retaining 100% of the profits in contravention of the Agreement.

65. As an actual and proximate result of Defendant's unjust enrichment, Plaintiff is entitled to a judgment against Defendant for its suffered injuries including, but not limited to:

    a.    the loss of the Owed Funds,

    b.    the loss of daily interest on the Owed Funds,

    c.    lost opportunity for not having the Owed Funds to invest in other business ventures,

    d.    the loss of the value of the Business itself,

    e.    the loss of profits made by the Business,

    f.    the loss of the value of the trade secrets of the Business

    g.    the loss of the opportunity to sell the business, in part or totally, to another party,

    h.    the cost of recovery and collection, and

    i.    reasonable attorneys' fees and costs incurred by Plaintiff in this action.

## Attorney Fees

66. Plaintiff repeats and realleges the preceding paragraphs as if fully stated verbatim herein.

67. Defendant's refusal to pay the Owed Funds per the Contract demonstrates Defendant's:

a. willful breach of the Agreement with express ulterior or sinister motives,

b. fraudulent disposition by using Owed Funds outside of the express contractual use; and

c. motives were not prompted by an honest mistake as to their rights or duties under the Agreement.

68. Defendant's bad faith actions have caused Plaintiff unnecessary trouble and expense including, but not limited to:

a. the loss of the Owed Funds,

b. the loss of daily interest on the Owed Funds,

c. lost opportunity for not having the Owed Funds to invest in other business ventures,

d. the loss of the value of the Business itself,

e. the loss of profits made by the Business,

f. the loss of the value of the trade secrets of the Business

g. the loss of the opportunity to sell the business, in part or totally, to another party,

h. the cost of recovery and collection, and

i. reasonable attorneys' fees and costs incurred by Plaintiff in this action.

69. The longstanding "Erie Doctrine" *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), permits the application of state substantive law in cases of diversity jurisdiction, and the question of attorney fees and costs is not connected to the Federal question of asset ownership in this case but rather falls under the scope of this case's diversity jurisdiction.

70. For the reasons set forth above, and pursuant to Tenn. Code Ann. § 47-50-109, Plaintiff is entitled to recovery of all reasonable attorneys' fees and costs, including but not limited to Plaintiff's cost of travel and per diem incurred by Plaintiff in this action due to Defendant's bad faith actions.

## PRAYER FOR RELIEF

**WHEREFORE,** based on Defendant's tortious and unlawful conduct, Plaintiff requests that this Court award the following relief against Defendant.

1. **GENERAL AND COMPENSATORY DAMAGES**, in an amount to be determined, but in no case, less than $1,000,000.00 (One Million Dollars) plus interest at the maximum legal rate, accruing each day since June 26, 2021, the date upon which Plaintiff induced Defendant to enter the fraudulent putative agreement;

2. **TREBLE DAMAGES**, pursuant to Tenn. Code Ann. § 47-50-109 in an amount to be determined;

3. **SPECIAL AND CONSEQUENTIAL DAMAGES,** in an amount to be determined;

4. **PUNITIVE DAMAGES** pursuant to Tenn. Code Ann. § 29-39-104 in an amount to be determined;

5. **DECLARATORY JUDGMENT** confirming ownership of Bolton's Famous Hot Chicken and Fish, LLC and Bolton's Spicy Cafe, LLC to belong to Dollye Graham-Matthews

6. **ALL REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES** including, but not limited to, court costs and fees; accountants; and experts; fees, costs, and expenses; and Plaintiff's reasonable travel expenses, and a per diem for expenses incurred by Plaintiff in this action.

Dated: __1/03__, 2025

Respectfully submitted by:

/s/ Andrew M. Mitchell

Andrew Mitchell, BPR #035645

Boon Legal, LLC
*Attorney for Plaintiff*
41 Peabody St.
Nashville, Tennessee 37210
Office: (615) 956-2817
andrew@boonlegal.com

## VERIFICATION OF COMPLAINT:

S.S.
State of Tennessee
County of Rutherford

Comes now my Affiant and having first been duly sworn does hereby depose and say:

I, Dollye Graham-Matthews, am the Plaintiff in my own capacity and the organizer and owner of Plaintiff in this case, and I have personal knowledge of the facts set forth herein and do make oath the same is true and correct to the best of my knowledge and belief.

_____
Dollye Graham-Matthews

Sworn to and subscribed before me this __19__ day of __October__, 2024.

_____
Notary Public

My Commission Expires: __August 19, 2028__

/s/ Andrew M. Mitchell

Andrew Mitchell, BPR #035645