# AGREEMENT

This Agreement (this "Agreement") dated as of June 26, 2021 is entered into between LT Johnson DDS (referred to herein as "Purchaser"), Bolton's Spicy Chicken and Fish, Dollye Graham-Matthews (Collectively referred to herein as "Seller").

WHEREAS, the Seller owns and operates the restaurant locations in Nashville, TN called Bolton's Spicy Chicken and Fish ("the Business"), with its main location at 624 Main Street, Nashville, TN 37206.

WHEREAS, Purchaser is a Texas resident who is interested in purchasing Bolton's Spicy Chicken and Fish, a Tennessee business;

WHEREAS, Seller desires to sale the Business and release ownership of the name and all assets to Purchaser and Purchaser desires to purchase ownership of the name and all assets of the Seller.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Purchase Price. The aggregate purchase price for the Business, Business name and all assets shall be $500,000.00 (the "Purchase Price"). The Purchase Price may be lower or increased to One Million Dollars ($1,000,000.00) or a higher amount by agreement of both parties if it is later shown that the actual valuation of the Business was a lower or higher amount than the current Purchase Price on the date this Agreement was signed by the parties.

2. Purchaser and Seller agree that the Purchase Price will be paid in a partial upfront lump sum down payment and thereafter in Monthly Installments. Since Purchaser has already paid $30,000, he will pay an additional $70,000 upfront to make the total initial upfront payment of $100,000. Purchaser will then pay another $50,000 upfront after the first three months if the business hits certain agreed up numbers and the overall employee wages do not exceed 25%.

3. Purchaser shall make future payments to Seller as follows: from July 2021 to September 2021, three monthly installments of $15,000.00; thereafter beginning in October 2021 until the purchase price is paid in full, Seller may be paid between $15,000.00 to $20,000.00 per month, which monthly amount is contingent upon the amounts received from business production each month. Alternatively, the parties may agree that the Purchaser may pay Seller the Purchase Price by Installments in the amount of a certain percentage of the business production each month.

Case 3:25-cv-00079    Document 1-1    Filed 01/22/25    Page 1 of 8 PageID #: 17

4. Engagement. Purchaser hereby engages Dollye Graham-Matthews as independent contractors to perform duties as management and assist with running the daily operations of the Business. Dollye Graham-Matthews both agree to use their best efforts to work with Purchaser and assist with the overall business operations and management of the Business, subject to the terms and conditions set forth herein.

5. Term of Agreement. The engagement of Dollye Graham-Matthews shall commence on the Effective Date and shall continue in full force and effect for two (2) years from such date, unless earlier terminated by Purchaser in accordance with Section 9 hereof. This engagement shall be renewed automatically and indefinitely on the same terms unless either party notifies the other with sixty (60) days prior notice of intent not to continue the engagement.

6. Compensation. Company agrees to compensate Dollye Graham-Matthews for services performed as follows: (a). Company agrees to make monthly payments to Dollye Graham-Matthews in the amount of $7,500.00 per month if the business production allows this amount to be paid, which amount is contingent on the business production each month and if the business hits certain agreed up numbers and the overall employee wages do not exceed 25%. In any event, Company intends to pay Dollye Graham- Matthews a reasonable compensation for services performed.

7. General Responsibilities. To perform the services of this engagement  Dollye Graham-Matthews agree to: spend between 4 to 5 days per week working at the Business; use her best efforts in maintaining good relationships with all future and former business associates, customers, workers, landlords, etc.; use her efforts to transfer and transition all business relationships to Purchaser; continue to provide good customer service; assist in the overall business operations, development efforts, and growth objectives.  Dollye Graham-Matthews also agree to use her best efforts in performing those duties and at all times to act in good faith.

8. Powers.   Dollye Graham-Matthews will only have such powers and authorizations that are provided by Purchaser.

9. Termination. If any one or more of the following events shall occur, Purchaser may, at its option, immediately terminate this Agreement and Engagement upon notice to Seller of such termination:

(a)     if Seller commit a breach in the performance of or compliance with any of the covenants, agreements, terms or conditions of this Agreement, and such breach continues for a period of thirty (30) days after written notice thereof from Company to Seller specifying the nature of the breach;

(b)     upon the filing of a petition in voluntary bankruptcy or an assignment for the benefit of creditors by Seller, or upon other action taken or

Case 3:25-cv-00079     Document 1-1     Filed 01/22/25     Page 2 of 8 PageID #: 18

suffered, voluntarily or involuntarily, under any federal or state law for the benefit of insolvents by Seller;

    (c)    if Seller commit fraud, misappropriation, embezzlement or the like of Company's assets or property;

    (d)    if Seller commit or engages in gross negligence or intentional misconduct.

Termination or cancellation of this Agreement or Engagement for any reason whatsoever shall in no way release any party from any payments, obligations or liabilities arising prior to termination or arising from acts or failures to act on or before the date of termination or otherwise due after termination pursuant to the terms of this Agreement. Furthermore, no termination of this Agreement shall in any way affect the survival of any right, duty, or obligation which is expressly stated elsewhere in this Agreement to survive such termination.

10. Seller Warranties. Seller shall be responsible for the payment of any and all taxes (including, but not limited to, employment taxes), licenses, assessments or other legal obligations relating to the operation and ownership of the Business for the period prior to the Transfer. Seller warrants that all financial data supplied to Purchaser is a total and true representation of the financial position of the Business. Seller has the power and authority to execute and deliver this Agreement and consummate the transactions contemplated hereby and has taken all action required to be taken by or on the part of Seller to authorize the execution, delivery and performance of this Agreement. This Agreement has been duly and validly executed and delivered on Seller's behalf, constitutes a valid and binding obligation of Seller, enforceable in accordance with its terms (except as enforceability may be limited by bankruptcy and similar Laws affecting the enforcement of creditors' rights generally or equitable considerations which may affect a court's exercise of its equitable powers). Neither the execution and delivery of this Agreement, nor the performance of its obligations hereunder, by Seller is a violation of any provision of any Law, rule, regulation, order, writ, injunction, judgment or decree to which it is a party or to which it or the Assets is/are subject. Further, the consummation of the transactions contemplated by this Agreement shall not constitute a violation of or a default under any contract, commitment, lease or other agreement or any other restriction of any kind to which Seller is a party or by which Seller is bound, nor cause an acceleration or increase any liability owed by Seller pursuant to any such contract, commitment, lease or other agreement. No consent or approval by, or filing with, any governmental authority or any other person is required in connection with the execution and delivery by Seller of this Agreement or for consummation of the transactions contemplated hereby.

a.     All Business Assets being transferred from Seller to Purchaser pursuant hereto shall be transferred in "As Is" condition with all faults and without warranty of any kind whatsoever, except as expressly set forth herein.

b.     Seller warrants that the property being transferred will be free and clear of any liens and encumbrances on the date of Transfer. Seller further warrants that it is the lawful owner of and has good marketable title to the equipment and to all other properties and assets being sold, transferred and assigned as part of Seller's Business to Purchaser hereunder and that none of such Business Assets are subject to any lease obligation whatsoever. Seller represents that all Business Assets that were customarily used by the Seller in the Business are located at the Business Location and that Seller is not aware of any Business Assets that are not fully operational as of the date of the Transfer, except as disclosed to Purchaser in writing.

c.     Seller warrants that the Business has all necessary consents, zoning, health and professional permits to operate the Business at the Business Location.

d.     Seller is not aware of any litigation, claim, action, suit or governmental or other proceeding or investigation pending, or, to the best knowledge of Seller, threatened, against the Seller, any of the Business Assets, the Business or any transaction contemplated hereby or incidental hereto, at law or in equity, or before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, wherever located.

e.     Seller shall disclose to Purchaser any material or significant information and/or changes that have occurred in the Business or affect the Business Assets (including, but not limited to, any pending litigation, actions or threatened actions by the State, County, City, local governmental entity, or from any other governmental agency that materially alter the desirability or economic potential of the Business) prior to the time of the date of Transfer.

f.     Seller agrees to pay, indemnify, defend and hold Purchaser harmless from all salary, wages, accrued benefits including payroll taxes, vacation, sick leave, accrued vacation pay, unemployment and any other claims of employees of Seller's Business incurred or accrued prior to and including the day of Transfer and Seller will comply with unemployment benefits set forth under the laws of the State of Texas.

Case 3:25-cv-00079     Document 1-1     Filed 01/22/25     Page 4 of 8 PageID #: 20

g.  Seller has delivered, or prior to the Transfer will deliver, to Purchaser the lists of the names and annual rates of pay and other compensation (including benefits) of all employees or workers of the Business. Seller hereby agrees that any of its employees or workers are free to work for Purchaser if Purchaser shall elect to employ any or all of the same, but that Purchaser is under no obligation to do so. To the extent that Purchaser does hire employees or workers of Seller, Seller shall not be responsible for the contractual arrangement between Purchaser and any such employee or worker, and Purchaser shall be able reach separate employment arrangements with them.

h.  Seller agrees to pay, indemnify, defend and hold Purchaser harmless from any claim of any employee or worker not employed by Purchaser which arises from or relates to such employee or worker prior employment by Seller or an alleged right to continued employment based upon Seller's employment, conduct or representations to such employee prior to the Transfer, or any claim for unemployment benefits by any employee not hired by Purchaser immediately after the Transfer.

i.  Seller is not currently, and the consummation of the transactions covered by this Agreement will not result, in the breach of, or cause the default under, any agreement, contract, indenture, document, instrument or decree of any court, administrative agency or governmental body to which Seller is a party or by which Seller or any of the Business Assets is bound or subject to. Seller takes full responsibility for payments of all federal, state, county, local and other taxes, including, without limitation, income taxes, sales taxes, ad valorem and personal property taxes due and payable by Seller in respect of the Business Assets and the Business which have not been paid prior to the Transfer and Seller is responsible for filing all tax returns and reports required to be filed with all applicable taxing authorities prior to the Transfer.

j.  Purchaser shall not assume or incur any liability to Seller or to Seller's employees, business associates, customers, landlords for actions by Seller prior to Transfer. After Transfer, Purchaser shall notify Seller, when possible, of any complaints pertaining to treatment rendered by Seller before Purchaser recommends any corrective treatment to the patient and before Purchaser discusses the problem with the complainant.

11. Indemnification. Seller agrees to indemnify, save, and hold Purchaser free, clear, and harmless of, from and against any claim, liability, or demand, which may include but not be limited to attorneys' fees, court costs, investigation expenses, tax liabilities, torts, claims, suits, or Business actions that may arise from or relate to the operation or ownership of the Business prior to the time of Transfer.

Case 3:25-cv-00079    Document 1-1    Filed 01/22/25    Page 5 of 8 PageID #: 21

a. Seller further warrants that Seller does not have any contingent liabilities, or causes of action pending or threatened against Seller, known or unknown, for any act performed by Seller or on Seller's behalf prior to the time of Transfer, and Seller does hereby agree to indemnify and hold harmless Purchaser from and against such liabilities, or causes of action, including reasonable attorney's fees and court costs.

b. Purchaser agrees to indemnify, save, and hold Seller, free, clear and harmless of, from and against any claim, liability, or demand, which may include but not be limited to attorneys' fees, court costs, investigation expenses, tax liabilities, torts, claims, suits, or Business actions that may arise from or relate to the operation or ownership of the Business subsequent to the time of Transfer, except for acts or omissions committed by Seller.

c. The liabilities and obligations contained in this Agreement shall survive the Transfer.

12. Taxes. Seller shall be solely responsible for any transfer, sales, or other taxes that may become due as a result of the sale of the Business.

13. Creditors. Notwithstanding anything to the contrary contained herein, Purchaser expressly is not assuming any liability to complete contracts or cases in progress, debts, accounts payable, taxes, assessments, obligations or liabilities of any kind currently held, owed or incurred by Seller. All supplies or expenses ordered or incurred by Seller prior to the Transfer will be paid for by Seller prior to the Transfer or prior to the due date, if received after the Transfer.

14. Independent Contractor. It is understood and agreed that Dollye Graham-Matthews's service relationship with the Business is that of an independent contractor, and nothing contained in this Agreement shall be construed to create any partnership, joint venture, principal/agent relationship, or any other fiduciary relationship between the parties hereto. Purchaser and Dollye Graham-Matthews agree to treat Dollye Graham-Matthews as an independent contractor for purposes of all tax laws (local, state and federal) and to file forms consistent with that status for services provided.

15. Disclosures. Seller agree that Seller will forever not, throughout perpetuity, disclose or reveal to any other person, firm, or entity, or use, directly or indirectly, for Seller's' own benefit or the benefit of another, the **"Recipe of the Spicy Chicken and Fish**." Seller will also not disclose or reveal to any other person, firm, or entity, or use, directly or indirectly, for Seller's' own benefit or the benefit of another any of the Business, trade secrets, operating methods, techniques or other confidential information about the Business nor confidential information revealed to it by Purchaser during the business relationship and for a period of three (3) years from the date of Seller's termination with the Business, whether that termination is voluntary or involuntary.

Case 3:25-cv-00079    Document 1-1    Filed 01/22/25    Page 6 of 8 PageID #: 22

16. <u>Indemnification.</u> Seller hereby agree to indemnify and hold the Business harmless for any liability, damage, loss, claim, cost or expense (including attorney's fees) incurred by Seller by reason of Seller's negligence.

17. <u>Governing Law.</u> Severability. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, and it is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the State of Texas. If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

18. <u>Notices.</u> All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing or email and shall be considered as properly given if emailed to the addresses as follows:

| | |
|---|---|
| If to Purchaser: | LT Johnson; <u>ltjohnson@ofsih.com;</u> or (816) 500-8417 |
| If to Seller: | Dollye Graham- Matthews; <u>Boltonschickenandfish@yahoo.com;</u> or (615) 943-8618 |

A party may change the address for notice by giving notice of such change to the other parties in writing or by email.

19. <u>Transfer by Death.</u> Upon the death of Seller, Dollye Graham-Matthews, any remaining payments of the Purchase Price and/or monies owed to Dollye Graham-Matthews shall be transferred to her heirs or assigns, the executor or administrator of the estate, if any, shall promptly notify the Purchaser in writing of the death and such notice shall set forth the name and address of the person or persons who would be entitled to receive the remaining payments and/or monies owed to Dollye Graham-Matthews under the terms of her will, trust, or, if she died intestate, under the law of intestate succession.

20. <u>Attorney Review.</u> The Parties hereby represent and warrant that they have been advised of their right to retain Independent Legal Counsel, in connection with the negotiation and execution of this Agreement, and that they have either retained and have been represented by such Legal Counsel or have knowingly and voluntarily waived their right to such Legal Counsel, and desire to enter into this Agreement without the benefit of Legal Counsel.

Case 3:25-cv-00079    Document 1-1    Filed 01/22/25    Page 7 of 8 PageID #: 23

21. <u>Headings.</u> The headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation thereof.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first written above.

Executed on June 26, 2021.

Signed: _____

Name: LT Johnson, DDS

Signed: _____

Name: Dollye Graham-Matthews, Individually

Signed: _____

Name: Dollye Graham-Matthews

Title: Owner, Bolton's Spicy Chicken and Fish