| | |
|---|---|
| **Dollye Graham-Matthews**<br>    Individually and in her capacity as the<br>    Organizer and Managing Member of<br>    Bolton's Spicy Cafe, LLC, and each of its<br>    related entities and/or subsidiaries,<br>        and<br>**Bolton's Spicy Cafe**, **LLC**<br>and   each   of   its   related   entities   and/or<br>subsidiaries,<br>        Plaintiffs<br><br>**v.**<br><br>**L.T. Johnson**<br>    Individually and in his capacity as the<br>    Organizer and Managing Member of<br>    Bolton's Famous Hot Chicken and Fish,<br>    LLC, and each of its related entities and/or<br>    subsidiaries,<br>        and<br>**Bolton's Famous Hot Chicken and Fish,**<br>**LLC**<br>and   each   of   its   related   entities   and/or<br>subsidiaries,<br>        Defendants | **Judge Campbell**<br>**Magistrate Judge Frensley**<br>**Case No.: 3:25-cv-00079** |

## ANSWER TO COUNTERCLAIM

Comes  now  Plaintiff,  Dollye  Graham-Matthews  as  Counter-Defendant,  (  "**Ms. Graham-**

**Matthews**"),  by  and  through  her  undersigned  counsel,  and  submits  her  Answer  in  Opposition  to

Defendant LaErrol T. Johnson's Counterclaim:

## PARTIES

1.  Ms. Graham-Matthews admits the allegations of paragraph 1.

2. Ms. Graham-Matthews admits the allegations of paragraph 2.

## JURISDICTION & VENUE

3. Ms. Graham-Matthews admits the allegations of paragraph 3.

4. Ms. Graham-Matthews admits the allegations of paragraph 4.

5. Ms. Graham-Matthews admits the allegations of paragraph 5.

## FACTUAL ALLEGATIONS

6. Ms. Graham-Matthews denies the allegations of Paragraph 6 insofar as they make the legal conclusion that the document the parties signed was (i) an actual Agreement or (ii) for the purchase and sale of a restaurant business. The document marked as Exhibit A speaks for itself. Ms. Graham-Matthews would further deny that her restaurant business is or was ever named "Bolton's Spicy Chicken and Fish."

7. Ms. Graham-Matthews denies the allegations of Paragraph 6 insofar as they make the legal conclusion that the document the parties signed was (i) an actual Agreement or (ii) for the purchase and sale of a restaurant business. The document marked as Exhibit A ("Putative Agreement") speaks for itself.

8. Ms. Graham-Matthews denies the allegations of Paragraph 6 insofar as they make the legal conclusion that the document the parties signed was (i) an actual Agreement or (ii) for the purchase and sale of a restaurant business. The Putative Agreement speaks for itself.

9. Ms. Graham-Matthews is without sufficient knowledge to admit or deny the allegations of Paragraph 9 and thus effectively denies the allegations in this paragraph and demands strict proof thereof.

10. Ms. Graham-Matthews, denies that these taxes had accrued to any entity named "Bolton's Spicy Chicken and Fish," which is identified as the "Restaurant Business" in paragraph 10, but admits the accrual of taxes to Bolton's Spicy Café, LLC.

11. Ms. Graham-Matthews denies the allegations of paragraph 11 insofar as they conclude an obligation to Counter-Plaintiff or a valid agreement.

12. Ms. Graham-Matthews is without sufficient knowledge to admit or deny the allegations of Paragraph 12 and thus effectively denies the allegations in this paragraph and demands strict proof thereof.

## CAUSE OF ACTION

### Breach of Contract

13. Ms. Graham-Matthews incorporates her admissions or denials as stated in the paragraphs referenced by paragraph 13.

14. Ms. Graham-Matthews denies the allegations set forth in paragraph 14.

15. Ms. Graham-Matthews denies the allegations set forth in paragraph 15.

16. Ms. Graham-Matthews denies the allegations set forth in paragraph 16.

## AFFIRMATIVE AND OTHER DEFENSES

The Counterclaim fails to state a claim upon which relief can be granted.

### FIRST AFFIRMATIVE DEFENSE
### The Putative Agreement is Unenforceable due to failure of Consideration

The failure, in whole or in part, of the consideration to a written contract, may be shown as a defense. Tenn. Code Ann. § 47-50-104. Additionally, Texas Law holds that an agreement's essential terms must be sufficiently definite to confirm the parties' intent to be bound and to enable a court to understand

Page 3 of 9

their obligations and provide remedies (*Fischer v. CTMI, L.L.C.*, 479 S.W. 3d 231 (2016)); The Putative

Agreement ambiguously states:

> 1. <u>Purchase Price</u>. The aggregate purchase price for *the Business*, *Business name and all assets shall be $500,000.00* (the "Purchase Price"). The Purchase Price may be lower or increased to One Million Dollars ($1,000,000.00) or a higher amount *by agreement of both parties* if it is later shown that the *actual valuation* of the Business was *a lower or higher amount than the current* Purchase Price on the date this Agreement was signed by the parties.
>
> 2. Purchaser and Seller agree that the Purchase Price will be paid in a partial upfront lump sum down payment and thereafter in Monthly Installments. Since Purchaser has already paid $30,000, he will pay an additional $70,000 upfront to make the total initial upfront payment of $100,000. Purchaser will then pay another $50,000 upfront after the first three months *if the business hits certain agreed up numbers* and the overall employee wages do not exceed 25%
>
> 3. Purchaser shall make future payments to seller as follows: from July 2021 to September 2021, three monthly installments of $15,000.00; thereafter beginning in October 2021 until the purchase price is paid in full, Seller may be paid between $15,000.00 to $20,000.00 per month, *which monthly amount is contingent upon the amounts received from business production each month*. Alternatively, the parties may agree that the Purchaser may pay Seller the Purchase Price by Installments in the amount of a certain percentage of the business production each month.

At the very outset, the Putative Agreement begins by failing to establish clear price points between

A Business, which is improperly named by the Putative Agreement, and its peripheral assets. Next, it makes

these already murky price points potentially clouded by a secondary valuation which itself appears to be

contingent upon the mutual agreement of the parties, which would be incomprehensible assuming arguendo

that a purchaser purchased for less than the business was worth or the seller sold it for more than what it

was worth, no party would have a mechanism or desire to enforce or agree to a change in price valuation.

Next, the Putative Agreement promises initial up-front payments of $100,000, followed by another

$50,000, *if the business hits certain agreed up(on) numbers,* AND overall employee wages do not exceed

25% (something the Purchaser would exclusively control). The pattern continues in the third paragraph,

where future payments from the seller may vary by $5,000 depending on how much the Business receives

from "production" each month. Nowhere are these numbers written or certain.

Nowhere in the Putative Agreement does the Seller covenant to sell a business, assign rights, or transfer title, and nowhere else does it mention the "certain agreed up(on) numbers" or what "amounts received from business production each month" qualify as contingencies for future payments to justify $15,000.00 or $20,000.00 payments.

## SECOND AFFIRMATIVE DEFENSE
### The Putative Agreement is Unenforceable because its failure to incorporate the full extent of its anticipated written consideration violates the Statute of Frauds

The Putative Agreement Marked <u>Exhibit A</u> anticipates in § 5. (*Term of Agreement)* a 2-year term with indefinite renewal unless terminated. Agreements which are not to be performed within one year from the date of making the agreement must be in writing. Tenn. Code Ann. 29-2-101(a)(4); *see also* TX Bus & Com Code § 26.01(b)(5).

Here, a price is set, and the recitals show a mutual "desire" to purchase and sell, but neither the obligation to actually sell a restaurant business nor a clear indication of what Ms. Graham-Matthews would be paid, "agreed upon numbers" or other contingencies are written anywhere in the agreement.

Taken together, these absence of even a sufficiently general scope of these multi-year obligations and contingencies to consideration of both parties' performance are fatal deficiencies which lie at the heart of the Putative Agreement, because what is not written cannot be enforced under both Tennessee and Texas' Statues of Frauds. *Sterrett v. Jacobs*, 226 S.W.2d 376 (Tex. Civ. App.—Dallas 1949, writ ref'd n.r.e.); *See Also Smith v. Hi-Speed, Inc.,* 536 S.W.3d 458 (Tenn. Ct. App. 2017) This renders the Putative Agreement unenforceable.

## THIRD AFFIRMATIVE DEFENSE
### Fraud in the Inducement

The Putative Agreement was prepared by counsel hired by Counter-Plaintiff, and was delivered to Ms. Graham-Matthews shortly after the death of her husband, the late Bolton Matthews. Counter-Plaintiff did so to intentionally mislead Ms. Graham-Matthews to sign an illusory document which made no

Page 5 of 9

definite guarantees of performance by either party, with each promise contingent upon factors which are not referenced anywhere, or are within the exclusive control and determination of the putative Purchaser, which, by his own actions, he never intended to honor to begin with.

## FOURTH AFFIRMATIVE DEFENSE
### Equitable Estoppel

Ms. Graham-Matthews continued to work alongside restaurant staff for a significant period of time, in reliance upon the belief that she would be eventually compensated fairly. During that time, if the Counter-Plaintiff believed that she had breached the agreement, they could have provided notice of such breach or filed suit, which they did not do. Instead, Counter-Plaintiff continued making arbitrary (in both amount and timing) partial payments to Ms. Graham-Matthews until the commencement of this action. Counter-Plaintiff's continued attempts at partial performance and continued business dealings under a vague notion of a business relationship estops him from asserting Breach of Contract.

## FIFTH AFFIRMATIVE DEFENSE
### Waiver

A failure to enforce contractual provisions and continuing to derive benefits from an agreement while having knowledge of a breach from the other party constitutes a waiver of these provisions. *Madden Phillips Const., Inc. v. GGAT Development Corp.*, 315 S.W.3d 800 (2009). Under Texas law, silence or inaction for long periods of time that manifest an unambiguous abandonment of claims of breach constitute waiver of those claims. *Rescue Concepts Inc. v. HouReal Corporation*, 696 S.W.3d 127 (2022); *Horton v. DaimlerChrysler Financial Services Americas*, L.L.C., 262 S.W.3d 1 (2008). Counter-Plaintiff's repeated nominal payments to Ms. Graham-Matthews, after his discovery of the tax burden and subsequent failure to terminate the Putative Agreement and general failure to enforce any of the provisions of the Putative Agreement constitutes a waiver of those provisions.

**SIXTH AFFIRMATIVE DEFENSE**
**Unclean Hands**

Counter-Plaintiff deliberately took advantage of a grieving widow, who was not trained in the law, induced her to sign a single bogus document to effectuate the transfer of ownership of a business without any accompanying addenda or proper documentation, and intentionally left her without just compensation. Even if the Putative Agreement were enforceable, the myriad clawbacks and loopholes Counter-Plaintiff put into the agreement coupled with the utter dearth of accompanying payment schedules for reaching a full purchase price, basis for evaluation, addenda or corporate transfer documents show that Counter-Plaintiff never intended to pay more than an initial downpayment of a fraction of the minimum ($500,000.00) amounts anticipated under the Putative Agreement, let alone the potential "One Million or Higher" amounts anticipated as a possible compensation. Dfts' Answer ¶ 14. Such a deficiency is not fairly offset by the amount allegedly paid in taxes (which Counter-Plaintiff would not have had to pay but for his own negligence). *See Also* Dft's Answer ¶ 9.

**SEVENTH AFFIRMATIVE DEFENSE**
**Unjust Enrichment**

While there is no express liquidated damages provision within the Putative Agreement, Counter-Plaintiff's case effectively rests on the defense that the existence of a $142,000 tax lien is sufficient breach for him to seize the entire business as liquidated damages after paying only $150,000, plus $142,000 in taxes, for a total of $292,000 for a business that based on Counter-Plaintiff's own Putative Agreement is worth at least a minimum of $500,000, and potentially $1,000.000 or more. Under the Uniform Commercial Code, a term fixing unreasonably large liquidated damages is void as a penalty Tenn. Code Ann. § 47-2-718; In Texas, Courts have roundly held that a vast disparity between the liquidated damages and actual damages renders the provision unenforceable *FPL Energy, LLC v. TXU Portfolio Management* Co., L.P., 426 S.W.3d 59 (2014); *Atrium Medical Center, LP v. Houston Red C LLC*, 595 S.W.3d 188 (2020). The Counter-Plaintiff argues the doctrine of unclean hands bars Ms. Graham-Matthews from demanding full payment under the Putative Agreement, but Permitting the

Page 7 of 9

Counter-Plaintiff to assert the failure to disclose a tax lien as justification for only paying 59% of the minimum purchase price, or any subsequent payments, while still maintaining the windfall of the benefit of the full value of the business.

## EIGHTH AFFIRMATIVE DEFENSE
### Laches

Counter-Plaintiff's significant delay in bringing suit for Breach of Contract unduly prejudices Ms. Graham-Matthews. She acted in good faith for a significant period of time expecting Counter-Plaintiff to actually close the deal or in some other way complete or terminate the anticipated purpose of the Putative Agreement. His failure to do so materially changed Ms. Graham-Matthews' position, contributed to spoliation of evidence, and increased Counter-Plaintiff's own damages to provide a basis retroactively withhold performance.

## NINTH AFFIRMATIVE DEFENSE
### Failure to Mitigate Damages

Counter-Plaintiff claims damages in the form of a tax lien which encumbered Bolton's Spicy Café, LLC. Counter-Plaintiff identified himself to the state and began making these payments despite the fact that (1) he was never listed as the registered owner of Bolton's Spicy Café, LLC according to the Tennessee Secretary of State's Office; and (2) if he had actually purchased all of the assets of the business, he would only have had to have created a new entity using the name, likeness, and recipe rather than assuming the debts of an entity which was to be wound up and dissolved, and left any such tax burdens to Ms. Graham-Matthews, who could have paid these tax burdens out of even the bare minimum payments anticipated under the Putative Agreements, if he had actually made them.

## PRAYER FOR RELIEF

WHEREFORE, having answered the allegations of the Counter-Complaint, Ms. Graham Matthews is entitled to have all claims asserted against her dismissed and with all costs adjudged against Counter Plaintiff.

Dated: July 7, 2025

Respectfully submitted by:

/s/ Andrew M. Mitchell
Andrew Mitchell, BPR #035645

Boon Legal, LLC
*Attorney for Plaintiff*
41 Peabody St.
Nashville, Tennessee 37210
Office: (615) 956-2817
andrew@boonlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of May, 2025, a true and exact copy of the foregoing document was filed electronically and notice will be sent to the following through the Court's CM/ECF System:

Kristen J. Walker (BPR No. 35989)
Spencer Fane Bone McAllester LLP
*Attorney for Defendants L.T. Johnson
and Bolton's Famous Hot Chicken and Fish, LLC*
511 Union Street, Suite 1000
Nashville, Tennessee 37219-1778
kwalker@spencerfane.com

/s/ Andrew M. Mitchell
Andrew Mitchell, BPR #035645